LOUDEE IRON & METAL CO., INC., Appellant-Respondent, *v.* D. ALPER & CO., INC., et al., Respondents-Appellants.

First Department, November 29, 1955.

*Edward R. Downing* of counsel (*Thomas C. Halloran* with him on the brief; *Satterlee, Browne & Cherbonnier,* attorneys), for appellant-respondent.

*Samuel Rothstein* of counsel (*Rothstein & Korzenik,* attorneys), for respondents-appellants.

BERGAN, J. The plaintiff and corporate defendant in 1948 entered into a joint venture for the purchase and sale of steel, the profits or losses to be shared equally; and individual defendant, as a signatory to the instrument which formalized the undertaking, guaranteed the performance of the codefendant.

The venture lost money. It expended over $400,000 and took in about $240,000; and in December, 1949, the parties undertook in writing to distribute the losses upon a somewhat different basis from the equal shares provided by the original undertaking.

They formalized this purpose in two instruments each dated December 6, 1949, and each signed in exactly the same fashion by all the signatories to the original agreement of joint venture. The two instruments of 1949 differed from each other in respects which become material on this appeal. Both recited that the sum of $160,000 was set as the " estimated loss " of the joint enterprise, but that final loss should be ultimately determined when the venture was wound up by an accounting between the parties.

But one instrument set up a modification of the original agreement to provide that the plaintiff would share 75% of the losses or profits of the enterprise, and corporate defendant 25%; and both corporate and individual defendant undertook to pay $40,000 of the $160,000 estimated losses in monthly installments of $500. Upon any default the remaining unpaid part of the $40,000 would thereupon become payable at the election of plaintiff.

The other instrument recited that plaintiff agreed " to reduce the said liability " of both defendants " to Forty Thousand ($40,000.00) Dollars " payable in $500 monthly installments with an acceleration provision similar to that recited in the instrument which has been discussed. This instrument, however, contained a concluding provision that if defendants failed to perform any of the conditions recited, including the installment payments " then the original liability of Eighty Thousand ($80,000.00) Dollars * * * shall revive and become of full force and effect ". No such clause was contained in the other instrument.

Alleging a default in payment by defendants of the monthly installments, plaintiff sued on the instrument just described and has invoked the revival clause by which defendants would become liable for $80,000; and on this basis has demanded judgment for a balance which it computes at $59,112.02.

Defendants have pleaded as controlling the instrument more favorable to them which, as it has been seen, fixes their share of the losses absolutely at $40,000 and contains no revival clause. Defendants also contend that under either instrument if their remaining indebtedness were offset by credits of some $20,000 which they contend plaintiff ought to allow, they would have fully met their obligation to pay $40,000 in accordance with the terms by which the joint undertaking was wound up.

At the conclusion of the trial the Special Term found the instrument not containing the revival clause to have been the operative undertaking between the parties; and found that amounts paid by defendants which should be credited to them fully offset the amounts due to plaintiff under the agreement winding up the enterprise and entered judgment for defendants accordingly dismissing the complaint. The court also dismissed defendants' counterclaim based on credits and payments exceeding the amounts due plaintiff; but defendants have abandoned their appeal from this part of the judgment.

We are confronted with two written instruments purporting to be signed on the same date by the same parties dealing with the same subject matter and with the same formality; but which, as the instruments stand nakedly together, are quite inconsistent. One fixes defendants' liability absolutely at $40,000; the other fixes it conditionally and provides for a revival of an $80,000 liability.

If the parties were rational when they indulged in such mutually exclusive written formalities, as indeed they are presumed to have been, there must have been some reasonably explainable

basis for what they did. The first that might come to mind would be the use of one paper for the perusal of the income tax officer and the use of the other for the true guidance of the conduct and obligations of the parties; and, indeed, such a purpose is advanced by the uncontradicted testimony given by the individual defendant.

He swore in effect that the instrument providing for the $80,000 revival was signed so that he could take an income tax reduction on a loss in that amount which could be passed on by him to a resident of Canada who had an interest in the undertaking not disclosed on the face of the signed instruments before us, and which this defendant signed on the assurance of an accountant that it would be quite all right with the appropriate tax officials.

But unless it was the intention of defendants to default on the installment payments, their obligation would not have been the $80,000 under the instrument with the revival clause since if $40,000 were paid on time it would require defendants' obligation. The tax utility of the $80,000 instrument, therefore, is not very clear unless it was conceived to be left so confused on the questions of default and revival that it became a safer instrument for tax negotiation than a more definite one would have been. After listening to the curious grounds discussed by both sides in the course of introducing the instruments, the Judge at Special Term asked the rather pertinent question of counsel "Do you think it was an intention to be obscure for some reason?"

We see no basis for accepting one instrument as expressing more definitively the intention of the parties than the other in the absence of proof in direction of explanation. The fact plaintiff pleads one instrument and defendants quite belatedly in the course of litigation plead the other, gives no greater authenticity to the one than to the other. Since they bear the same date and were signed by the same parties, they are readily deemed to have been executed simultaneously and each is presumed (Personal Property Law, § 33, subd. 2) to have been supported by due consideration.

In this situation, their being read together intelligibly is peculiarly dependent upon some other explanatory proof. Plaintiff has given none; defendants have offered proof the instrument without the $80,000 revival clause was the only instrument executed on December 6, 1949, the date both bear; and that the one with the revival clause was executed some months later and for the specific tax purpose he has elucidated.

Plaintiff whose formal execution of both instruments is undisputed has chosen to give no explanation; and while in this situation we would feel that the Special Term was justified in accepting as binding upon the parties the instrument fixing the defendants' obligation flatly at $40,000; since there should, for other reasons, be a new trial, that issue should also be re-examined.

The new trial is required primarily to reassess the validity of the offsets in excess of $20,000 which defendants assert should be credited against the claims of plaintiff; and this would have importance even if the instrument providing for the $80,000 revival is held to be operative; since if defendants are found to have been entitled to credits which would pay, or exceed, their obligation to pay $40,000 in accordance with the terms even of that instrument they would not be further liable to plaintiff.

Plaintiff argues that the specific undertaking of defendants to pay in specific monthly installments for a specific purpose could not be met by offsets or general credits claimed by defendants to be due them from plaintiff. This, however, is an action for a specific sum of money claimed to be due plaintiff from defendants; and under familiar principles of law defendants could offset amounts shown to be due them from plaintiff.

The Special Term, as it has been noted, found that the amounts due to defendants substantially offset the balance due to plaintiff and thus granted judgment dismissing both the complaint and defendants' counterclaim. The offset which defendants sustained at the trial which is most troublesome on this review is the sum of $10,000 allowed by the Special Term for the amount paid by defendants to settle an action prosecuted against them in Chicago based on a purported defect in steel.

The testimony of the individual defendant on the subject was uncontradicted, but also somewhat general. He testified that plaintiff's officers and representatives told him to settle the action for $10,000; and in respect of the necessary money he was told to "Lay it out" by plaintiff's officers and was told to "Make the best settlement you can". The implication from his testimony, none of which is factually denied by any witness for plaintiff, is that the $10,000 paid for settlement of the lawsuit against defendant was to be regarded as a credit against the obligation of $40,000 agreed to be paid by defendant to plaintiff.

There are impelling reasons why we are unwilling to accept so mere a generalization of testimony on an issue so important to the case as a basis for allowing full credit of $10,000 in favor

of defendants. In the first place the corporate defendant in the original agreement of joint undertaking was bound to assume responsibility for any deficiency of quality of the steel; a responsibility which the individual defendant underwrote.

Insofar as we are advised of the nature of the action against corporate defendant thus settled for $10,000, it arose from a defect in quality of material sold on behalf of the joint enterprise to a purchaser; but the record is far from complete or definite in this respect. The clause of the original undertaking pursuant to which the corporate defendant became responsible for defects in quality of the material sold by the joint enterprise was not modified or affected by either of the instruments of December 6, 1949, apportioning the losses. It would seem to us that in the absence of some very clear and explicit further agreement between the parties, the payment of this sum would be an obligation of the defendants under the joint enterprise agreement for which they would not be entitled to a credit on their settlement account.

How this is evaluated, one way or the other, readily could affect the question of whether their obligation to the enterprise settlement was to be $40,000 or $80,000 if it might be found on retrial that the instrument with the revival clause was the operative and controlling agreement, since if $10,000 is not credited to defendant's account of settlement with plaintiff, there has been a default in the final payment of that account.

And even if the $10,000 settlement was not for a subject for which defendants had a full obligation under the defect of quality clause of the agreement of joint undertaking and was merely for a settlement of a general claim against the venture, it would be reasonable to think that defendants would be obligated to pay on their own behalf at least one fourth of it, giving them the benefit of every favorable inference. Some of the other items of credit sought by defendants require further evaluation to be afforded at the new trial.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

BREITEL, J. P., BASTOW, BOTEIN and RABIN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to abide the event.